## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| POWELL ELECTRICAL SYSTEMS, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-10-993 |
| | § | |
| NATIONAL UNION FIRE INSURANCE | § | |
| COMPANY OF PITTSBURGH, PA., | § | |
| | § | |
| *Defendant*. | § | |

### MEMORANDUM AND ORDER

Pending before the court in this declaratory judgment action are cross-motions for summary judgment filed by plaintiff Powell Electrical Systems, Inc. ("Powell") (Dkt. 18) and defendant National Union Fire Insurance Company of Pittsburgh, PA. ("National Union") (Dkt. 27).  At issue in this insurance case is whether the liability policy issued to Powell by National Union vests the right to settle a covered third-party claim in Powell, or in National Union.  After review of the motions, the responses, exhibits, and the applicable law, the court concludes that Powell's motion for partial summary judgment (Dkt. 18) should be **GRANTED IN PART**, and that National Union's motion for summary judgment (Dkt. 27) should be **GRANTED** with respect to Powell's extra-contractual claims, but be **DENIED** in all other respects.

### BACKGROUND

**A.     The Policy.**

National Union issued a commercial liability policy bearing the number 544-05-97, effective from October 31, 2004, through October 31, 2005 ("Policy") and having a Policy limit of $1,000,000.  Dkts 18-5, 18-6.  The Policy is, as insurance policies tend to be, an amalgam of forms

that begin with a general policy which is then modified by endorsements.  Thus, both the general

form language, and any endorsements that operate to replace general policy language, are part of

the Policy itself.  *Id*.  In this case, an understanding of the modifications made to the general terms

by the endorsements is essential.

The "Commercial General Liability Coverage Form" section of the Policy originally

contained language obligating National Union to "pay all sums that [Powell] becomes legally

obligated to pay" (up to the Policy limit of $1,000,000) for covered claims, but subject to National

Union's "discretion" to "settle any claim" that may be filed.  Dkt. 18-5 at 10.  More specifically:

> a. [National Union] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [National Union] will have the right and duty to defend the insured against any "suit" seeking those damages. However, [National Union] will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. **[National Union] may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result**.

*Id*. (emphasis added).  The parties, however, agreed to a "Self-Insured Retention Endorsement"

("SIR") that "deleted in its entirety" the above-quoted language and replaced it with the following

provision:

> a. [National Union] will pay on behalf of the Insured those sums **in excess of the "Retained Limit"** that the Insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. **[National Union] will have the right but not the duty to defend any "suit" seeking those damages. [National Union] may at our discretion and expense, participate with you in the investigation of any "occurrence" and the defense or settlement of any claim or "suit" that may result.**

Dkt. 18-6 at 26 (emphasis added).  The SIR also "amended" the "Limits of Insurance" portion of the

Policy to reflect that the Policy coverages "apply in excess of the Self-Insured Retention (referred

to throughout as the 'Retained Limit')."  Dkt. 18-6 at 27.  Powell's "Retained Limit" or self-insurance for each claim or occurrence is $250,000.  *Id.*

The original terms of the Policy also included a "cooperation clause" obligating Powell to cooperate with National Union "in the investigation or settlement" of a claim, and a "no voluntary payment" clause that prevented Powell "except at its own cost" from assuming any obligation with respect to a covered claim without National Union's consent.  Dkt. 18-5 at 20.  These provisions appeared in the "Duties in Event of Occurrence" portion of the Policy's general terms.  *Id.*   The SIR replaced the "Duties in Event of Occurrence" language in its entirety, including the "cooperation clause" and the "no voluntary payment clause" referenced above.  Dkt. 18-6 at 28.

The "Duties in Event of Occurrence" language was changed by the SIR to require notice on a quarterly basis of any occurrences that "may result in payments" within Powell's $250,000 Retained Limit, and to require separate, individual notice of any occurrences that might result in a "claim" under the Policy, i.e., any occurrence that might result in a claim exceeding Powell's Retained Limit.  Dkt. 18-6 at 28.  In a separate provision, the SIR further changed the "Duties in Event of Occurrence" language to require Powell to employ a "Claims Administrator" acceptable to National Union who would provide "claim services."  Dkt. 18-6 at 28.  Further, any "[l]oss settlements made by [Powell] or the Claims Administrator will be within the terms, conditions and limits of the policy."  *Id.*  And, "there will be no reduction of the 'Retained Limit' because of payment of claims" not covered under the Policy.  *Id.* at 29.

Finally, the SIR changed the standard provisions of the Policy relating to the costs associated with investigating and defending claims.  The original Policy provision, which applied prior to the endorsement that altered National Union's duty to defend all claims, made National Union responsible for **all** costs of investigation and defense.  Dkt. 18-5 at 16-17.  The SIR replaced this

provision with an "Allocated Loss Adjustment Expenses" ("ALAE") provision which states that expenses paid by National Union will not reduce the "Limits of Insurance," but that Powell is responsible for ALAE according to the following formula:

> i.  If [National Union] incur[s] NO obligation under the policy to pay any damages resulting from a claim, [Powell is] responsible for all "Allocated Loss Adjustment Expenses" up to the applicable "Retained Limit" plus 100.0% of all remaining "Allocated Loss Adjustment Expenses."

> ii.  If [National Union] DO[ES] incur an obligation under the policy(ies) to pay damages resulting from a claim, [Powell] will be responsible for a percentage of "Allocated Loss Adjustment Expenses." That percentage shall be determined by dividing the "Retained Limit" paid by the total damages paid, subject to the limits of insurance.

Dkt. 18-6 at 27.[1]

## B.    The HP lawsuit.

Powell performed work for the Hewlett Packard Corporation ("HP"), and dispute arose that resulted in HP filing a lawsuit against Powell in the 55th Judicial District Court of Harris County, Texas in 2007 ("HP Lawsuit").  HP asserted claims against Powell for negligence, breach of contract, and breach of warranty, with respect to equipment Powell installed at HP's facility in Houston, Texas.  Dkt. 18-7.  Powell tendered the defense of the lawsuit to National Union.  Powell continued to use, and to pay, counsel of its choosing.  Dkt. 27 ¶ 31.  Prior to trial in the HP Lawsuit, Powell demanded that National Union fund a settlement pursuant to a demand made by HP in November, 2007.  National Union refused, and asserted that more discovery was necessary before

---

[1]  Powell chose this version of ALAE from four available options within the terms of the Policy.  Powell's choices were to be responsible for one of the following: (A) all of the "Allocated Loss Adjustment Expenses" up to the "Retained Limit" at which point National Union would be responsible; (B) 100% of the total "Allocated Loss Adjustment Expenses" without limit or reduction; (C) all or part of the "Allocated Loss Adjustment Expenses" determined by the above formula; or (D) none of the "Allocated Loss Adjustment Expenses."  Dkt. 18-6 at 27.  Powell opted for "C."

a settlement could be reached.[2]   National Union asserts that Powell agreed to this position.  Dkt. 27

¶ 32.  A second demand by Powell to settle prior to trial, and after an additional defendant was

added, was also rejected, but the parties dispute why this occurred.  Powell asserts that National

Union wanted a greater contribution from the newly-joined defendant, and National Union asserts

that "many factors" prevented settlement.  Dkt. 18 ¶ 33; Dkt. 27 ¶ 33.

The case proceeded to trial, and a jury returned a verdict for HP and against Powell in the

amount of $1,090,112.12.  Dkt. 18 ¶ 35.  After trial, Powell again demanded that National Union

fund its portion of a settlement with HP, within the Policy limits.  Dkt. 18 ¶ 40.  Specifically, on

September 15, 2009, Powell wrote to National Union renewing its "demand" that the HP Lawsuit

"be settled immediately" and that the "plain terms of the [Policy] . . . give Powell the right to control

the defense and settlement of this action . . . [and] obligate National Union to cooperate in the

defense and settlement of the case."  Dkt. 27-14 at 1.  After an email response, Powell again wrote

on September 29, 2009, that it and not National Union "has the right to make the decision as to

whether the [HP Lawsuit] should be settled" and that "National Union is obligated to cooperate in

good faith."  Dkt. 27-14 at 7.   National Union refused by letter dated October 5, 2009, asserting

that:  (1) the Policy "does not give Powell the unilateral right to settle a case in excess of the Self

---

[2]  The parties appear to dispute whether National Union actually assumed Powell's defense prior to trial but allowed Powell to use counsel of its choice (National Union's position), or whether Powell tendered the defense to National Union, but National Union declined to defend, which left Powell to provide its own defense (Powell's position).  The Policy provides that National Union has the right to defend, but not the duty to do so, and that any "participation" by National Union in the defense of a claim will be at National Union's expense.  Here, the parties do not contest that National Union did not assume the *costs* of defense prior to or during trial.  Therefore, since Powell funded its own defense prior to and during trial, it does not appear that National Union  exercised its right to defend the suit either prior to or during trial.  The court, however, does not find the question of whether, or when, National Union actually took over defense of the HP Lawsuit relevant to the issue of which party has contractual right to control settlement.

Insured Retention nor does it state that if National Union does not agree to a settlement, it is required to assume all defense costs thereafter; and (2) "if Powell were to voluntarily settle the appeal [of the HP Lawsuit] without National Union's consent" this would constitute a violation of the "no voluntary payment" provision of the Policy.  Dkt. 27-14 at 11.  National Union also explicitly assumed the defense of the HP Lawsuit for purposes of filing an appeal, and agreed that this effort would be at its own expense.  *Id.* at 11-12.

The appeal was unsuccessful, with the trial court's rulings being affirmed, but National Union, on Powell's behalf, sought and received rehearing.  The appeal is, therefore, still pending.

**C.    This case and the pending motions.**

Powell filed this lawsuit seeking a declaration of the parties' respective rights and obligations under the Policy.  Dkt. 1.  Powell also asserts claims for damages for breach of contract arising from National Union's refusal to honor Powell's decision to settle the HP Lawsuit, and for a violation of the Texas Insurance Code due to National Union's failure to cooperate in settlement of the HP Lawsuit.  *Id.*

Powell has filed a motion for partial summary judgment seeking a ruling that the Policy gives it the right to settle claims, and that National Union's refusal to settle after repeated demands to do so was a breach of contract and a violation of the Texas statute.  Dkt. 18.  Powell does not seek summary judgment with respect to damages.  *Id.* at 24.

National Union responded, and also seeks summary judgment in its own right, arguing that while the Policy does provide Powell with discretion to settle claims *within* the Retained Limit, the parties could not have intended to vest Powell with the sole discretion to settle a case *in excess* of the Retained Limit, because that would give Powell control over National Union's funds. Dkt. 27-1.

6

National Union argues that it retained the right to control settlement of claims above the Retained

Limit or, in the alternative, that the Policy is silent as to which party controls the right to settle.  *Id.*

## ANALYSIS

### I.    Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving

party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56.  Under Rule 56(c), the moving

party bears the initial burden of "informing the district court of the basis for its motion, and

identifying those portions of [the record] which it believes demonstrate the absence of a genuine

issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986); *see*

*Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).  The party moving for summary

judgment must show the absence of a genuine issue of material fact but need not negate the elements

of the nonmovant's case.  *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1074 (5th Cir.

1997).  If the moving party fails to meet its initial burden, the motion for summary judgment must

be denied, regardless of the nonmovant's response.  *United States v. $92,203.00 in U.S. Currency*,

537 F.3d 504, 507 (5th Cir. 2008).

When the moving party has met its Rule 56(c) burden, the nonmovant cannot survive a

motion for summary judgment by resting on the mere allegations of its pleadings.  *See Prejean v.*

*Foster*, 227 F.3d 504, 508 (5th Cir. 2000).  The nonmovant must go beyond the pleadings and

designate specific facts showing that there is a genuine issue for trial.  *See id.*  The nonmovant must

do more than show that there is "some metaphysical doubt as to the material facts."  *Little v. Liquid*

*Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting *Matsushita Electric*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348 (1986)).  In deciding a

summary judgment motion, the court reviews the facts drawing all reasonable inferences in the light

most favorable to the nonmovant. *Marathon E.G. Holding Ltd. v. CMS Enters. Co.*, 597 F.3d 311, 316 (5th Cir. 2010).

## II.    Contract Interpretation

Insurance policies are contracts, and they are construed using ordinary rules of contract interpretation. *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828,831 (Tex. 2009). Courts must exercise caution not to isolate particular sections or provisions of a Policy. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). The primary objective of the court is to ascertain the parties' intent as expressed in the written instrument. *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.3d 132, 133 (Tex. 1994). In this respect, "the parties' intent is governed by what they said, not by what they *intended* to say but did not." *Nautilus Ins. Co. v. Country Oaks Apartments, Ltd.*, 566 F.3d 452, 455 (5th Cir. 2009) (quoting *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006)) (internal quotation marks omitted). The Policy must be read as a whole, and effect must be given to all parts if possible. *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010). Unambiguous language must be enforced as it is written, while ambiguous language must be resolved in favor of the insured if it is reasonable to do so. *Don's Bldg. Supply v. One Beacon Ins.*, 267 S.W.3d 20, 23 (Tex. 2008). Language is ambiguous only if it is susceptible to more than one reasonable interpretation. *Id.* Language is not ambiguous merely because the parties interpret it differently. *Fiess*, 202 S.W.3d at 746. Whether a particular provision or the interaction among multiple provisions creates an ambiguity is always a question of law, and ambiguity must be determined by the four corners of the Policy itself without reference to parole evidence. *Page*, 315 S.W.3d at 527.

### III.     Application

Under Texas law, whether "an insurer has the right to conduct its insured's defense is a matter of contract." *N. Cnty. Mut. Ins. Co. v. Davalos*, 140 S.W.3d 685, 688 (Tex. 2004).  The right to control settlement of claims made by third-parties is related to the right to defend, and is also  a matter of contract.  *Dear v. Scottsdale Ins. Co.*, 947 S.W.2d 908, 913–14 (Tex.App.–Dallas 1997, pet. denied), <u>overruled on other grounds</u> by *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 122–23 (Tex. 2001) (when policy gives insurer right to settle third-party claims, courts are not permitted to "engraft any consent requirement onto [the] policy").  Here, then, the question for the court is whether the parties have indicated within the four corners of the Policy which of them has the right to control settlement of the HP Lawsuit.

At the heart of this dispute is the following SIR Endorsement, which replaces general Policy provisions, and which is repeated here for clarity:

> a. [National Union] will pay on behalf of the Insured those sums **in excess of the "Retained Limit"** that the Insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. **[National Union] will have the right but not the duty to defend any "suit" seeking those damages. [National Union] may at our discretion and expense, participate with you in the investigation of any "occurrence" and the defense or settlement of any claim or "suit" that may result.**

Dkt. 18-6 at 26 (emphasis added).  This provision was inserted in recognition of the fact that the parties had changed their relationship because Powell agreed, in effect, to pay all claims against it that result in damages less than $250,000 (the "Retained Limit"), thereby making it a self-insurer with respect to such claims.  Thus, National Union agreed in the first sentence to pay Powell only for sums in *excess* of the Retained Limit.  As to suits "seeking those damages," i.e., damages in excess of the Retained Limit, National Union has the "right but not the duty to defend."  National Union may, therefore, choose not to become involved in any way in the defense of even a claim that

exceeds the Retained Limit.  Lastly, the final sentence reserves to National Union the right to

"participate" in defense and settlement of a claim regarding any "occurrence," which is defined

elsewhere in the Policy to include claims both within the Retained Limit and which may exceed the

Retained Limit.

A plain reading of this provision reveals that it does not expressly reserve to National Union

the right to control settlement of a claim made under the Policy, whether within or in excess of the

Retained Limit.  The Policy provides only that National Union has the right to "participate with"

Powell in the defense or settlement of a claim.  National Union argues that the entire SIR

Endorsement applies only to claims within Powell's Retained Limit:

> Based on the terms of the SIR Endorsement . . . and common sense, it is
> apparent that National Union did not cede its right to control the defense or
> settlements of amounts over [Powell's] $250,000 SIR.  Rather, the SIR Endorsement
> gives [Powell] the right to control settlements within its $250,000 SIR.

(Dkt. 27-1 at 18).  This position is defeated by a plain reading of the SIR.  The SIR begins by

explicitly referencing National Union's duty to pay claims *above* the Retained Limit.  The second

sentence likewise addresses claims *in excess* of the Retained Limit because it reserves to National

Union the right (but not the duty) to defend any suit seeking "those damages," a clear reference back

to the "damages" in the first sentence which are "sums in excess of the Retained Limit."   And, of

course, the key in this case is the third sentence of the provision, which provides National Union the

right to "participate" in settlement.  National Union's argument that this sentence applies only to

claims within the Retained Limit ignores the fact that the sentence immediately follows two

sentences that expressly reference claims *in excess* of the Retained Limit.  Further, National Union,

which drafted this provision, did not include any language limiting its application only to claims

within the Retained Limit.  Specifically, the provision grants to National Union the right to

"participate" in the settlement or defense of any "claim or suit" arising from an "occurrence."  An

10

"occurrence" is defined in the Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Dkt. 18-5 at 23. A "suit" is defined as a "civil proceeding" seeking damages "to which this insurance applies . . .." *Id*. at 24. There is no mention of the Retained Limit, and certainly no language that could reasonably be interpreted as limiting the SIR's application only to claims within the Retained Limit.

The court must still, however, determine what National Union's "right to participate" means in the context of the Policy as a whole, and the facts of this case. The Policy provides that National Union has a right to "participate" in the defense or settlement of the HP Lawsuit. "Participate" is not defined in the Policy and, accordingly, it is given its normal, accepted meaning. *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 8 (Tex .2007). "Participate" means to "take part." *Webster's Ninth New Collegiate Dictionary* 858 (1991). Powell asserts, and National Union does not dispute, that National Union actually did take part in all of the settlement discussions in the HP Lawsuit. Notably, National Union does not argue that its right to "participate" in settlement means that it is entitled to "control" settlement, or that "participate" has any meaning that could arguably vest in it a contractual right to refuse to pay a claim its insured has decided to settle. Indeed, in its pleadings, National Union takes no position on the meaning of "participate" at all, except to suggest that this provision, along with others in the SIR, "gives [Powell] the right to control settlements within" the Retained Limit. Dkt. 27-1 at 18. The court has already rejected the argument that the provisions of the SIR apply only to claims below the Retained Limit.

National Union does, however, take an alternative position— that the Policy is "silent" with respect to which party has the right to control settlement. The court disagrees. As noted above, the SIR Endorsement requires Powell to employ a "Claims Administrator" acceptable to National Union. Dkt. 18-6 at 28. Further, the parties intended that Powell would have the right to settle

claims made under the Policy, because the SIR also states that "[l]oss settlements made by [Powell] or the Claims Administrator will be within the terms, conditions and limits of the policy." *Id*. National Union asserts that the "within the terms, conditions and limits" language means that Powell must settle with its Retained Limit. However, like the earlier portions of the SIR Endorsement, if National Union (which drafted the provision) intended to grant Powell the right to make settlements only within its Retained Limit, it failed to include any language that could reasonably be construed to accomplish that limitation. No mention is made in this portion of the SIR, or anywhere else in the Policy, of any limitation on Powell's ability to settle a claim. The court cannot, consistent with Texas law, read such terms into the Policy because it must interpret the parties' intent "by what they said, not by what they *intended* to say but did not." *Nautilus Ins. Co. v. Country Oaks Apartments, Ltd.*, 566 F.3d at 455.

Further, this is not simply a case where National Union neglected to include language it arguably may have intended to include. Were the court to rule that National Union retained the right to control settlement in this case, it would be reading *back into* the contract provisions *explicitly removed* by the parties. There is no question that the general policy provision granting National Union the "discretion" to settle claims would be enforced by Texas courts as an explicit grant of authority to control settlement of third-party claims. *Dear*, 947 S.W.2d at 913–14. That language, which still appears within the Policy itself, was expressly removed in its entirety and replaced by the SIR which not only grants Powell the right to settle claims, but also contains no limitations on Powell's ability to do so. Texas law does not permit a court to read a provision into a policy, and certainly does not permit the court to give a party the benefit of a provision it expressly removed from the Policy.

12

Therefore, the Policy does provide that settlements will be made by Powell, and does not reserve to National Union any control over the settlement process. National Union argues, however, that it would not have ceded a right that all insurers insist upon—the right to control litigation and settlement of claims— when its funds, as opposed to the insured's funds, are at stake. In stating this, however, National Union implicitly recognizes that the right to control litigation and settlement of claims against an insured is contractual under Texas law. *Dear*, 947 S.W.2d at 913–14. It may be that it is inadvisable for an insurer to contractually agree to allow its insured to control settlement in this context, but under Texas law it is most certainly something that an insurer can accomplish. In this respect, National Union's argument is similar to an argument that has been rejected by a Texas court. In *Methodist Hospital v. Zurich American Insurance Co.*, 329 S.W.3d 510 (Tex.App.–Houston 2009, no pet.), in the context of ruling that a workmen's comp insurance policy that allowed the insurer to settle claims within the insured's deductible is what the parties bargained for, the court noted:

> Texas has a "strong commitment to the principle of contractual freedom" and its "indispensable partner-contract enforcement." See *Churchill Forge, Inc. v. Brown*, 61 S.W.3d 368, 371 (Tex. 2001); *In re Wells Fargo Bank Minn., N.A.*, 115 S.W.3d 600, 607 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding [mand. denied] ); see also *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003) ( "we may neither rewrite the parties' contract nor add to its language."). In short, Methodist seeks to impose contractual and extra-contractual duties that are contrary to the terms of the contract for which it bargained.

*Id.* at 525. If Texas permits an insurer to control an insured's funds in the context of settlement if that is what the insurance policy provides, then the same "commitment to contractual freedom" should apply to the opposite situation—National Union cannot complain that Powell's right to settle claims under the Policy is objectionable simply because Powell may be able to commit National Union's funds. If National Union wanted a different arrangement for controlling the settlement of claims made under the Policy, and specifically with respect to settlements that involve funds within

13

National Union's $1,000,000 limit of exposure above the Retained Limit, it was free to include such provisions in the Policy.  As for the language that does appear the Policy, the court can find no ambiguity.  Powell had the right to settle claims under the Policy, so long as the settlement did not expose National Union to liability beyond the Policy limit, and so long as National Union participated in the settlement.  National Union had no contractual right to insist that a settlement of the HP Lawsuit be accomplished only with its consent.

National Union has, accordingly, breached the provisions of the Policy by refusing to settle when Powell demanded that HP's offer be accepted, and National Union is liable for any damages flowing from this breach.[3]

## IV.   Insurance Code Claims

National Union asserts both in response to Powell's motion for partial summary judgment, and as a basis for National Union's motion for summary judgment, that Powell has failed to allege damage independent of the damages arising from the underlying breach of the insurance contract. *Parkans Int'l LLC v. Zurich Ins. Co.*, 299 F.3d 514, 519 (5th Cir. 2002) (under Texas law "[t]here can be no recovery for extra-contractual damages for mishandling claims unless the complained of actions or omissions caused injury independent of those that would have resulted from wrongful denial of policy benefits").  Powell's damages in this case arise, if at all, from National Union's failure to comply with the terms of the contract.  At this stage, it was Powell's obligation to present proof of such independent injury, but it has failed to do so.  Accordingly, Powell is not entitled to extra-contractual damages absent evidence of an independent injury, and Powell's motion for partial summary judgment is **DENIED**, and National Union's motion for summary judgment is

---

[3]  Powell does not seek a ruling on damages at this point.

**GRANTED**, with respect to Powell's claims for extra-contractual damages under the Texas Insurance Code.

CONCLUSION

Accordingly, Powell's motion for partial summary judgment (Dkt. 18) is **GRANTED IN PART** in that Powell is entitled to a declaration that it has the contractual right to settle the HP Lawsuit, and to a ruling that National Union breached its contract with Powell by refusing Powell's demanded that National Union accept HP's settlement offer.

It is further **ORDERED** that National Union's motion for summary judgment (Dkt. 27) is **GRANTED** with respect to Powell's extra-contractual claims, but is **DENIED** in all other respects.

It is so **ORDERED**.

Signed at Houston, Texas on August 29, 2011.

_____
Gray H. Miller
United States District Judge